RESTETSKY et al., Respondents, v. DELMAR AVENUE & CLAYTON RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, April 26, 1904.

1. **EVIDENCE:** **Prima Facie Case.** In an action for damages caused by the excavation of a street adjacent plaintiff's lot, evidence that a gang of laborers did the work in preparation of a grade for a railroad track the defendant company intended to lay, that the president of the company was seen among the laborers and that the defendant attempted to justify its action under a grant of authority from the county court, was sufficient for an inference by the jury that the defendant company excavated the street.

2. **DAMAGES FOR EXCAVATING ADJACENT STREET:** **Title in Plaintiff.** A subdivision of the tract containing the lot, and street excavated, by plaintiff's grantors and adverse possession of the lot thereafter for sixteen years, under color and claim of title, showed sufficient title to maintain the action for wrongful excavation of the adjacent street.

3. **STREETS: Title of Abutting Owner.** When lots abutting on a platted street are sold, the purchaser takes title to the center of the street unless a different intention appears.

4. ———: **Reservation of a Private Way: Damages for Excavating.** Where the proprietors of a tract of ground filed a plat with streets indicated and with a declaration indorsed thereon that the streets were reserved for the private use of the present and future occupants of the lots, the right to use the streets in connection with their property passed to all who successively took the lots in grant, and any such subsequent owner could maintain an action for damages caused by the excavation of the street adjacent his lot.

5. ——: ——: ——: **County Court's Authority.** The county court had no control over such private streets, and a railroad company could acquire no right to grade them, under authority from the county court to grade public roads.

6. **INSTRUCTION: Expert Testimony.** An instruction which told the jury they were not bound by the testimony of expert witnesses, but might apply their own judgment and knowledge of the things under consideration in connection with the testimony offered, was not error.

7. ——: ——. The use of the words "and other" in connection with experts was not prejudicial, where in the nature of the case all the testimony consisted of opinions concerning values.

Appeal from St. Louis City Circuit Court.—*Hon. J. A. Blevins*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann, George W. Easley* and *Crawley & Jamison* for appellant.

(1) The only instruction given by the court at the instance of plaintiff is palpably misleading and erroneous. In effect the jury were advised by said instruction that they were not bound by the testimony of expert witnesses. Nor were they bound by the testimony of non-experts. That the jury were at liberty to ignore the testimony of all the witnesses and estimate values and damages in accordance with their own knowledge and judgment. Hoyberg v. Hensecke, 153 Mo. 63. (2) There is no evidence that Rogers and his wife who sold to plaintiffs had any title to the tract of land conveyed, and the evidence fails to show title in plaintiffs. Turner v. Williams, 76 Mo. 617. (3) The second amended petition, upon which the case was tried, alleged that the so-called Vine and South streets had been granted and dedicated for the private use of plaintiffs. There is no evidence in the record of the dedication. "In the first place, there is, properly speaking, no such thing as a dedication to a private use." Coberly v. Butler, 63 Mo. App. 559. 9 Am. and Eng. Ency. of Law (2 Ed.), p. 23; Vossen v. Dautel, 116 Mo. 386; Coberly v. Butler, 63 Mo. App. 559.

*Joseph A. Wright* for respondents.

(1)    The plat (and its accompanying grant), introduced in evidence, and plaintiffs having proven their title, are entitled to recover for the damages sustained by the cutting down of Vine street, for many years prior thereto used by them as a private way.    First Presbyterian Church v. Kellar, 39 Mo. App. 441; Cunningham v. Fitzgerald, 138 N. Y. 165; Coudert v. Sayre, 46 N. J. Eq. 386; Fitzgerald v. Barbour, 55 Fed. 440; Jones on Easements 201.    (2)    Having purchased their lot as a part and parcel of lands thus platted, a right-of-way passed as an easement appurtenant thereto.    This right is acquired by an implied covenant as appurtenant to the premises granted.    The courts have gone so far as to construe this right in favor of the grantee as against a grantor who has retained title to adjoining lands. Such cases are much stronger from a defendant's standpoint than the case at bar, where the defendant appears in the role of a trespasser.    Vossen v. Dautel, 116 Mo. 379; Lennig v. Ocean City Association, 41 N. J. Eq. 606; Love v. Stiles, 25 N. J. Eq. 381; Chapin v. Brown, 15 R. I. 579; Palmer v. Palmer, 150 N. Y. 139; Bond v. Willis, 84 Va. 796; Pingree v. McDuffy, 53 N. H. 306; Kingsley v. Goldsborough Co., 86 Me. 279; Pinnington v. Galland, 10 E. R. C. 35; Howton v. Frearson, 8 T. R. 50.    (3)    Disregarding all questions of an easement in Vine street, the Constitution of 1875 gives to plaintiffs the right of compensation for the damages they have sustained.    The lot has been damaged within the meaning of the Constitution.    Const., art. 2, sec. 21; Werth v. Springfield, 78 Mo. 107; Householder v. Kansas City, 83 Mo. 488; Davis v. Railway, 119 Mo. 180; Railroad v. Gordon, 157 Mo. 71.    (4)    In the Constitution of 1875, however, easements essential to the enjoyment of property can no more be taken away or destroyed without compensation than the corpus of the property.    Van De Vere v. Kansas City, 107 Mo. 83; Gaus Mfg. Co. v.

Railroad, 113 Mo. 308; Thomas v. Hunt, 134 Mo. 392. (5) Instruction No. 1, given by the court, is identical with the instruction approved in Kansas City v. Butterfield, 89 Mo. 646, and followed in an unbroken line by subsequent decisions of the appellate courts of the State. Kansas City v. Butterfield, 89 Mo. 646; St. Louis v. Ranken, 95 Mo. 189; State v. Whitten, 100 Mo. 525; Hull v. St. Louis, 138 Mo. 618; Fullerton v. Fordyce, 144 Mo. 519; Hoyberg v. Henske, 153 Mo. 63; Brownrigg v. Massengale, 97 Mo. App. 190.

GOODE, J.—Plaintiffs are averred to be the owners and in possession of lot 1, block 3, of Rogers' Subdivision of Benton Place, a platted piece of ground just outside the limits of the city of St. Louis, abutting on two streets in said subdivision, Vine and South. The tract contains fifteen acres and was subdivided into lots and suitable roads and ways, designated as streets, April 17, 1884, by its then owners, George and Jane Rogers. On the plat of the subdivision, duly acknowledged and recorded, was the following certificate:

"St. Louis, Mo., April 17, 1884.

"We, the undersigned, proprietors of a fifteen-acre tract in Gratiot League square, U. S. survey 2037, township 45 north, range 6 east, certify that we have subdivided said tract as represented in the above plat, and that Vine street, fifty feet wide, High street, forty feet wide, Centre street, forty feet wide, and South street, forty feet wide, are reserved for the private use of the present and future occupants and proprietors of said subdivision and not dedicated for public use.

"Witness our hands and seals the day and year first above written.

"GEORGE ROGERS,          (Seal)<br>"JANE ROGERS.          (Seal)."

Plaintiffs' lot was conveyed by the Rogers to Katherine Riley's trustee July 9, 1888, and by Katherine

Riley through her trustee Richard L. Knott, to the plaintiffs, September 26, 1890. It is agreed those deeds conveyed to plaintiffs whatever right and title George and Jane Rogers had to the lot, which is described in each deed by its number and also by metes and bounds. The complaint against the defendant is that in July, 1899, while plaintiffs owned and were in possession of the lot, the defendant illegally entered on the streets named in front and at the side of the plaintiffs' lot, dug and removed the dirt from the streets to a depth of eight or ten feet, destroying access to said lot and changing the course of the drainage so that large quantities of water flowed down the streets and washed gullies in them. Damages were prayed for those acts.

The answer was a general denial.

Evidence to support the charge that the defendant dug and excavated along the streets mentioned, to the damage of plaintiff's property, was introduced, witnesses testifying to the extent of the damage, but varying in their estimates from more than $2,000 to an inconsiderable amount.

At the instances of the plaintiffs the court granted the following instruction, to which an exception was saved:

"You are instructed that in regard to the evidence before you, of experts and others, concerning the value of plaintiffs' lot before and after the grading and cutting down of Vine street and South street, complained of by plaintiffs, and the actual damage done, if any, you are not bound by the testimony of such witnesses, but may apply your own judgment and knowledge as to such values and damage, in arriving at your verdict in connection with the testimony offered in the case at trial."

The court refused instructions requested by the defendant, whose general purport was to deny any right of action to the plaintiffs on the ground that the streets had neither been dedicated to their use, nor granted to

them by the original owners; that no title to the lot or streets was shown in the plaintiffs and that no evidence was adduced to prove the defendant company committed the alleged torts.

The plaintiffs had a verdict for $1,500; but afterwards voluntarily remitted one-half of that amount. This appeal was taken by the defendant.

1. Evidence was put in which sufficed for an inference by the jury that the defendant company excavated the streets. A large gang of laborers did the work in preparation of a grade for a railroad track the defendant company intended to lay, and the president of the company was seen among the laborers. The company attempted to justify its action under a grant of authority from the county court of St. Louis county, authorizing it to construct a railroad over any public road within six hundred feet of the city limits, the street in question being within that distance of the corporate boundary of St. Louis.

2. As the original grantors under whom plaintiffs claim had subdivided the tract of land containing the streets and lot, sixteen years before the excavation occurred, and as plaintiffs, and those under whom they claim, had been in adverse possession of the lot during that period under color of title and claiming to own it, we hold plaintiffs showed sufficient title to maintain this action against the defendant as a wrongdoer. Watts v. Loomis, 81 Mo. 236.

3. Our opinion is that by virtue of the deeds put in evidence the plaintiffs owned the fee of the ground to the center of the streets that bordered their lot; for the plat shows no intention on the part of the original grantors to reserve the fee. Only the use of the streets by the proprietors was reserved. When lots abutting on a platted street are sold, the purchaser takes title to the center of the street unless a different intention appears. Elliott, Roads and Streets (2 Ed.), sec. 722; Mott v. Sargent, 119 Mass. 231; Peck v. Denniston, 121 Mass.

17; Gould v. Railroad, 142 Mass. 85; Weisbrad v. Railroad, 18 Wis. 35, 86 Am. Dec. 743; Hurley v. Miss., etc., Co., 34 Minn. 143. It is beyond doubt that plaintiffs had such an interest in the streets, either as owners of the fee, or of an easement, as gave them an action for the injury done to their lot by the excavation. The original proprietors declared on the plat filed and recorded by them that the streets were reserved for the private use of the present and future occupants of the lots in the subdivision. Plaintiffs became the owners of one of the lots and that reservation vested in them the use of the streets in connection with their property. Such a right is appurtenant to each lot and passes to all who successively take the lot in grant. Fox v. Sugar Refinery, 109 Mass. 292; Farnsworth v. Taylor, 9 Gray 162; Rogers v. Parker, Id. 445; First Pres. Church v. Kellar, 39 Mo. App. 441; Cunningham v. Fitzgerald, 138 N. Y. 165; Lennig v. Assn., 41 N. J. Eq. 606. The proposition that the defendant could cut down the streets eight feet below the surface of plaintiffs' lot, thereby impairing or destroying access to it, without making compensation, is inadmissible. Such a thing could not be done for public purposes; much less for private. The railroad company doubtless supposed it acquired authority to grade the streets from the county court, but was mistaken; because the authority granted related to public roads and the streets in question were private ways over which the county court had no control.

4. Complaint is made of the instruction regarding the testimony as to values and damages. The wisdom of warning juries about opinion evidence as to values, further than is done by the usual instruction that they are judges of the credibility of witnesses and the weight to be given to testimony, is questionable. A jury is never bound to accept the statement of a witness if it appears to be unreasonble; at least where there is contradictory testimony. But the practice of cautioning them particularly against opinion evidence is sanc-

tioned; and the point to be decided is whether the in-struction quoted comes within the sanction. Such a charge must not, either directly or by implication, tell the jury to disregard the testimony of experts in making up their verdict. Rosentreter v. Brady, 63 Mo. App. 398; Kansas City v. Hill, 80 Mo. 523. They should be admonished to consider that testimony along with the other evidence in the case; but may be told they are not bound by it. Kansas City v. Butterfield, 89 Mo. 646; Hoyberg v. Henske, 153 Mo. 63; Hull v. St. Louis, Trustee, 138 Mo. 618; State v. Witten, 100 Mo. 525; Brownrigg v. Massengale, 97 Mo. App. 190; Head v. Hargrave, 105 U. S. 45. The charge complained of advised the jury that the evidence of the experts concerning the value of the plaintiffs' lot before and after grading, and the actual damage done thereby, was not binding; but that they might apply their own judgment and knowledge of such things in reaching a verdict, in connection with the testimony offered in the case. This was instructing the jury to consider the testimony of the experts, but that they need not be controlled by it if it appeared to be unreasonable; and tried by the precedents, that advice was sound. Head v. Hargrave, supra. But it is said the jury were not only told the testimony of the experts on those issues was not binding, but that the testimony of the other witnesses was not binding. The words "and others" were superfluous, but non-prejudicial. In the nature of things all the testimony as to the value of the lot before and after the grading and the damage inflicted consisted of opinions, and could consist of nothing else. Kansas City v. Street, 36 Mo. App. 666. Doubtless those words were introduced from a notion that only the witnesses who were real estate agents were experts; but any witness who testified as to the damage done to plaintiffs' lot only gave his opinion on the subject, either derived from general knowledge of the value of real estate in the vicinity, or from his familiarity with the value of the

property in question and the injury done by the excavation. The instruction did not advise the jury they were not bound by the testimony of the witnesses as to positive facts, but only as to opinions expressed concerning values and the damage done. The charge was sound according to the cases and is a copy of one approved in Kansas City v. Butterfield, supra. So far as we know the rule prevails in all jurisdictions that opinions concerning the value of a parcel of land and the damage done to it by grading or condemnation, constitute opinion evidence to be weighed by a jury and tested by their experience and knowledge, but are not binding on them. Authorities supra; St. Louis v. Rankin, 95 Mo. 192 and many cases cited in note to Hull v. St. Louis, 42 L. R. A. 767.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.